**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

EVANSTON INSURANCE COMPANY,

              Plaintiff,

v.

SIX FORTUNE, LLC,

              Defendant.

Case No.  26-cv-2262

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Evanston Insurance Company ("Evanston"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Six Fortune, LLC ("Six Fortune") pursuant to 28 U.S.C. §§ 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure, alleges as follows:

**NATURE OF THE ACTION**

1. This lawsuit concerns an insurance coverage dispute. Evanston seeks declarations that it has no duty to defend or indemnify Six Fortune under four commercial general liability insurance policies issued to Six Fortune.

2. Evanston seeks these declarations in connection with an underlying breach of contract lawsuit filed against Six Fortune by Seafood City, Inc. ("Seafood City") captioned *Seafood City, Inc. v. Six Fortune, LLC*, Case No. 22SL-CC05246, Circuit Court of St. Louis County, State of Missouri (the "Underlying Lawsuit").

3. In the Underlying Lawsuit, Seafood City asserts claims for Breach of Lease (Count I), Breach of Covenant of Quiet Enjoyment (Count II), and Negligence (Count III) against Six

1

Fortune in connection with the leased property located at 8020 Olive Boulevard, University City, Missouri 63130 (the "Property"), which Property Seafood City leased from Six Fortune.

4. The damages sought in the Underlying Lawsuit are not potentially covered under any of the Evanston policies. Moreover, even if coverage was potentially implicated, multiple exclusions and other provisions in the Evanston policies would preclude any duty to defend or indemnify Six Fortune against the Underlying Lawsuit—including the Breach of Contract, Continuous Or Progressive Injury Or Damage, Damage to Property, and Hazardous or Toxic Substances exclusions.

5. Evanston owes no coverage obligation to Six Fortune in connection with the Underlying Lawsuit and Evanston is entitled to a declaration that it owes no defense or indemnity obligation to Six Fortune in connection with the Underlying Lawsuit.

**PARTIES**

6. Evanston is an Illinois corporation with its principal place of business in the state of Illinois.

7. Six Fortune is a Missouri limited liability company.

8. In or about August 2019, Six Fortune advised Evanston that Six Fortune's mailing address was 9880 Widmer Road, Lenexa, Kansas 66215. Six Fortune advised Evanston of that same mailing address in Lenexa, Kansas in or around August 2020, March 2022, and March 2023.

9. No member of Six Fortune is a citizen of the state of Illinois.

10. The members of Six Fortune are citizens of the states of Missouri, Kansas, and/or California.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(1) and 2202 because the parties are of diverse citizenship, the amount in controversy exceeds $75,000, exclusive of interest and costs, and Evanston seeks declaratory relief with respect to an actual controversy between the parties within this Court's jurisdiction.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the insurance policies at issue were issued to Six Fortune in Lenexa, Kansas.

**FACTUAL BACKGROUND**

13.     On or about April 1, 2018, Six Fortune leased the Property to Seafood City under a written lease agreement (the "Lease"). A copy of the Lease is attached as **Exhibit A**.

14.     Pursuant to the Lease, Seafood City operated a business on the Property known as Seafood City Supermarket.

15.     On December 15, 2022, Seafood City filed a Petition against Six Fortune in the Underlying Lawsuit.

16.     On August 16, 2023, Six Fortune filed a Petition against Seafood City alleging unpaid rent in connection with the Lease of the Property.

17.     On October 23, 2023, Six Fortune's lease and possession lawsuit (case number 23SL-AC22755) was consolidated into the Underlying Lawsuit (case number 22SL-CC05246).

18.     On April 25, 2024, Seafood City filed a Second Amended Petition against Six Fortune (and other defendants) in the Underlying Lawsuit. A copy of the Second Amended Petition in the Underlying Lawsuit is attached as **Exhibit B**.

19.     In the Underlying Lawsuit, Seafood City alleges that the Lease required Six Fortune to maintain certain portions of the Premises, including the roof, and citing Article 6B of the Lease.

20.     In the Underlying Lawsuit, Seafood City asserts breaches of the Lease and breach of contract claims against Six Fortune.

21.     In the Underlying Lawsuit, Seafood City's allegations against Six Fortune relate to Six Fortune's alleged failure to maintain the Property, including the roof.

22.     The Property's roof was allegedly damaged by hail in 2016 and in 2017.

23.     Cardinal Contractors, LLC ("Cardinal") was hired in 2018 to repair a portion of the roof of the Property.

24.     Six Fortune's first-party property insurer paid Cardinal approximately $400,000 for that 2018 work to repair a portion of the roof of the Property.

25.     Seafood City continued to complain of roof leaks after the work performed by Cardinal, including advising of roof leaks in 2019, 2020, and thereafter until the Property was allegedly condemned in or after March 2023.

26.     The Underlying Lawsuit alleges the defective condition of the roof has become exacerbated since February 2020.

27.     The Underlying Lawsuit alleges that roof leaks continued and "the existing defective conditions continued to further deteriorate" as of July 2022, resulting in the development of mold growth.

28.     Repair work and/or temporary patches were performed on the roof on multiple occasions, including in September 2019, February 2022, and October 2022.

29.     The roof leaks at the Property first started before August 14, 2019.

30. The roof at the Property was in need of replacement before August 14, 2019.

31. The roof at the Property was not replaced on or before March 2023, when Seafood City vacated the Property.

32. In the Underlying Lawsuit, Seafood City alleges that Six Fortune's failure to timely comply with its obligations and responsibilities under the Lease (1) interfered with the operation of Seafood City's store causing a loss of revenue, lost profits and damage to store equipment, fixtures and furnishings as well as products and inventory and loss to its reputation, (2) caused Seafood City to incur additional costs and expenses relating to efforts to prevent damage to its property, existing store equipment, fixtures and furnishings as well as products and product inventory, and (3) caused Seafood City to incur additional costs and expenses relating to governmental action against Seafood City.

33. In the Underlying Lawsuit, Seafood City alleges that repeated demands were made on Six Fortune to correct the defective conditions with the roof and comply with its obligations and responsibilities under the Lease.

34. The Underlying Lawsuit alleges that Six Fortune failed to timely comply with its obligations and responsibilities under the Lease.

35. The Underlying Lawsuit alleges that Six Fortune breached the Lease.

36. The Underlying Lawsuit alleges that Seafood City is entitled to costs and damages arising from Six Fortune's failure to comply with its obligations and responsibilities under the Lease.

37. In the Underlying Lawsuit, Seafood City also seeks attorneys' fees and costs it incurred in connection with Six Fortune's breach of the Lease.

**Evanston's Commercial General Liability Insurance Policies**

38.     Evanston issued four commercial general liability insurance policies to Six Fortune:

a.  Policy No. 3AA354624, policy period from August 14, 2019 to August 14, 2020 (the "2019-20 Evanston CGL Policy");

b.  Policy No. 3AA418283, policy period from August 14, 2020 to August 14, 2021 (the "2020-21 Evanston CGL Policy");

c.  Policy No. 3AA547821, policy period from March 6, 2022 to March 6, 2023 (the "2022-23 Evanston CGL Policy"); and

d.  Policy No. 3AA649300, policy period from March 6, 2023 to March 6, 2024 (the "2023-24 Evanston CGL Policy")

The 2019-20 Evanston CGL Policy, 2020-21 Evanston CGL Policy, 2022-23 Evanston CGL Policy, and 2023-24 Evanston CGL Policy are collectively referred to as the "Evanston CGL Policies".

39.     Bates stamped copies of the Evanston CGL Policies with sensitive pricing and premium information redacted are attached as **Exhibits C, D, E,** and **F**.

40.     The Evanston CGL Policies provide that "other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions."

41.     The Evanston CGL Policies provide "Bodily Injury and Property Damage Liability" coverage under Coverage A, as modified by the "Limitation Of Coverage To Designated Premises, Project or Operation" endorsement, including in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\*       \*       \*

**SECTION I – COVERAGES**

6

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

*    *    *

    **b.**    This insurance applies to "bodily injury" or "property damage" only if:

        **(1)**    The "bodily injury" or "property damage"

            **(a)**    Occurs on the premises shown in the Schedule [8020 Olive Boulevard, University City, MO 63130] or the grounds or structures appurtenant to those premises; or

            **(b)**    Arises out of the project or operation shown in the Schedule;

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*    *    *

    **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

7

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*      \*      \*

Ex. C at EIC000047; Ex. D at EIC000106; Ex. E at EIC000164; and Ex. F at EIC000221.

42.    The Evanston CGL Policies contain Exclusions, including as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\*      \*      \*

**2.    Exclusions**

This insurance does not apply to:

\*      \*      \*

**j.    Damage To Property**

"Property damage" to

**(1)**    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

\*      \*      \*

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

\*      \*      \*

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\*      \*      \*

Ex. C at EIC000050 and EIC000051; Ex. D at EIC000109 and EIC000110; Ex. E at EIC000167 and EIC000168; and Ex. F at EIC000224 and EIC000225.

8

43.     The Evanston CGL Policies provide "Personal and Advertising Injury Liability" insurance under Coverage B, as modified by the Limitation Of Coverage To Designated Premises, Project or Operation endorsement, including in relevant part, as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply…

*          *          *

**b.**     This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)**     The offense arises out of your business:

**(a)**     Performed on the premises shown in the Schedule [8020 Olive Boulevard, University City, MO 63130]; or

**(b)**     In connection with the project or operation shown in the Schedule; and

**(2)**     The offense was committed during the policy period.

However, with respect to Paragraph 1.b.(1)(a) of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)**     False arrest, detention or imprisonment; or

**(2)**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

Then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

*          *          *

9

Ex. C at EIC000052, EIC000065, and EIC000066; Ex. D at EIC000111, EIC000124, and EIC000125; Ex. E at EIC000169, EIC000181, and EIC000182; and Ex. F at EIC000226, EIC000239, and EIC000240.

44.    The Evanston CGL Policies contain Definitions, including as follows:

**SECTION V – DEFINITIONS**

\*        \*        \*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**    You have failed to fulfil the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\*        \*        \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\*        \*        \*

**c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

\*        \*        \*

**17.**    "Property damage" means:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*        \*        \*

**22.**    "Your work":

**a.**    Means:

10

**(1)**    Work or operations performed by you or on your behalf; and

**(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

**(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)**    The providing of or failure to provide warnings or instructions.

\*        \*        \*

Ex. C at EIC000059-EIC000062; Ex. D at EIC000118-EIC000121; Ex. E at EIC000176-EIC000179; and Ex. F at EIC000233-EIC000236.

45.    The 2019-20 and 2020-21 Evanston CGL Policies contain a Combination General Endorsement that modify the insurance, including as follows:

### COMBINATION GENERAL ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.    Paragraph 2. Exclusions under Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability and Coverage B- Personal And Advertising Injury Liability are amended as follows:

1.    The following exclusion:

a.    Is added to Coverage A: and

b.    Replaces the Breach Of Contract exclusion in Coverage B:

This insurance does not apply to:

**Breach Of Contract**

Claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in-fact contract.

\*        \*        \*

**Fines, Penalties And Punitive Or Exemplary Damages**

Fines, penalties, and punitive or exemplary damages, or any expenses or any obligation to share such damages or repay another. …

**Hazardous Or Toxic Materials**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by "hazardous or toxic materials":

11

**(1)**     Whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from "hazardous or toxic materials" This applies regarding of source, including but not limited to, from any goods, products or structures containing "hazardous or toxic materials", or the existence of "hazardous or toxic materials" in any form, in occupancy, construction, manufacture, sale, transportation, handling, storage, disposal, distribution or removal; and

**(2)**     Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to, abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of "hazardous or toxic materials", or in any way respond to assess the effects of "hazardous or toxic materials."

\*      \*      \*

**D.**     Section V – Definitions is amended to add the following:

\*      \*      \*

"Fungi" means any type or form of fungus, including mold or milder and any mycotoxins, spores, scents or byproducts produced or released by "fungi". However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

"Hazardous or toxic materials" means asbestos, lead, silica dust, toxic dust, "fungi", bacteria, organic pathogens, bio-organic growth or systemic chemical poison.

\*      \*      \*

Ex. C at EIC000071-EIC000072; Ex. D at EIC000130-EIC000131.

46.     The 2022-23 and 2023-24 Evanston CGL Policies contain a Combination General

Endorsement that modify the insurance, including as follows:

**COMBINATION GENERAL ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.     Paragraph 2. Exclusions under Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability and Coverage B- Personal And Advertising Injury Liability are amended as follows:

1.     The following exclusion:

a.     Is added to Coverage A: and

b.     Replaces the Breach Of Contract exclusion in Coverage B:

This insurance does not apply to:

12

**Breach Of Contract**

Any claim arising out of actual or alleged breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in-fact contract.

*        *        *

**Fines, Penalties, Punitive Damages, Or Exemplary Damages**

Fines, penalties, punitive damages, or exemplary damages, or any expenses or any obligation to share such damages or repay another

**Hazardous Or Toxic Materials**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by "hazardous or toxic materials":

**(1)**    Whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from "hazardous or toxic materials" This applies regarding of source, including but not limited to, from any goods, products or structures containing "hazardous or toxic materials", or the existence of "hazardous or toxic materials" in any form, in occupancy, construction, manufacture, sale, transportation, handling, storage, disposal, distribution or removal; and

**(2)**    Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to, abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of "hazardous or toxic materials", or in any way respond to assess the effects of "hazardous or toxic materials."

*        *        *

**D.**    Section V – Definitions is amended to add the following:

*        *        *

"Fungi" means any type or form of fungus, including mold or milder and any mycotoxins, spores, scents or byproducts produced or released by "fungi". However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

"Hazardous or toxic materials" means asbestos, lead, silica dust, toxic dust, "fungi", bacteria, organic pathogens, bio-organic growth or systemic chemical poison.

*        *        *

Ex. E at EIC000187-EIC000188; Ex. F at EIC00248-EIC000249.

47.    The Evanston CGL Policies contain an Exclusion – Continuous Or Progressive

Injury Or Damage endorsement that modify the insurance, including as follows:

13

**EXCLUSION - CONTINUOUS OR PROGRESSIVE INJURY OR DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*　　\*　　\*

This insurance does not apply to:

**Continuous Or Progressive Injury Or Damage**

"Bodily injury", "property damage" or "personal and advertising injury" which:

**(1)** First occurred, first began to occur, or is alleged to have first occurred;

**(2)** Is alleged to be in the process of occurring to any degree; or

**(3)** Is caused by or alleged to have been caused by incremental, continuous or progressive injury or damage arising from an "occurrence" or offense which first occurred, began to occur, or is alleged to have first occurred,

prior to the effective date of this policy.

\*　　\*　　\*

Ex. C at EIC000073; Ex. D at EIC000132; Ex. E at EIC000189; and Ex. F at EIC000250.

48.　　The 2023-24 Evanston CGL Policy contains an Exclusion – Conditional Open Roofs And Specified Roofing Operations endorsement that modifies the insurance, including as follows:

**EXCLUSION – CONDITIONAL OPEN ROOFS AND SPECIFIED ROOFING OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.  The following are added to Paragraph 2. Exclusions under Section I – Coverages, Coverage **A** – Bodily Injury And Property Damage

Specified Ongoing Or Completed Roofing Operations

"Bodily injury" or "property damage" arising out of any ongoing or completed operations involving any:

(1) Hot tar, wand, open flame, torch, or heat applications; or

(2) Roof membrane of any type.

\*　　\*　　\*

Ex. F at EIC000262.

14

49.     The Evanston CGL Policies include Section IV – Commercial General Liability Conditions, including in relevant part, as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*       \*       \*

**2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit**

> **a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. …
>
> \*       \*       \*
>
> **b.**     If a claim is made of "suit" is brought against any insured, you must:
>
> > **(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> \*       \*       \*
>
> **d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
>
> \*       \*       \*

Ex. C at EIC000057; Ex. D at EIC000116; Ex. E at EIC000174; and Ex. F at EIC000231.

50.     By letter dated March 1, 2025, Six Fortune first notified Evanston of Seafood City's 2018 claims against Six Fortune regarding the Property.

51.     By letter dated March 1, 2025, Six Fortune first notified Evanston of the 2022 Underlying Lawsuit against Six Fortune.

52.     At all times prior to March 1, 2025, Six Fortune was represented against the claims at issue in the Underlying Lawsuit by counsel selected, retained, and paid for by Six Fortune.

53.     In a coverage position letter dated April 17, 2025, Evanston agreed to defend Six Fortune against the Underlying Lawsuit.

54.     As of the filing of this declaratory judgment action, Evanston had reimbursed the full amount of Six Fortune's attorney's fees and expenses that were submitted to Evanston for payment and/or reimbursement for the three law firms Six Fortune retained to defend Six Fortune against the Underlying Lawsuit, including all attorney's fees and expenses dating back to Six Fortune's March 1, 2025 notice to Evanston.

55.     Evanston retained defense counsel to defend Six Fortune against the Underlying Lawsuit and Evanston has paid all attorney's fees and expenses for that defense counsel.

<u>COUNT I</u>
**DECLARATORY RELIEF**
**No Duty to Defend Six Fortune Against The Underlying Lawsuit**

56.     Evanston reiterates and incorporates Paragraphs 1-55 of its Complaint as if fully set forth and alleged herein.

57.     The Evanston CGL Policies provide, in part, that Evanston will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" that takes place during the policy period, and to which the respective CGL Policies otherwise apply.

**No "Occurrence"**

58.     The Evanston CGL Policies afford coverage for damages because of "property damage" only if the "property damage" is caused by an "occurrence."

59.     The claims asserted against Six Fortune in the Underlying Lawsuit are based solely on duties arising from the contractual relationship between Seafood City and Six Fortune.

60.     The claims against Six Fortune in the Underlying Lawsuit do not allege "property damage" caused by an "occurrence," as defined by the Evanston CGL Policies.

16

61.    To the extent the Underlying Lawsuit alleges Six Fortune is responsible for "property damage," as defined, such "property damage" was not caused by an "occurrence."

62.    The Evanston CGL Policies' Property Damage Liability coverage is not actually or potentially implicated by the Underlying Lawsuit.

63.    Evanston has no duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

**No "Property Damage" During the Policy Period of the 2019-20 or 2020-21 Evanston CGL Policies**

64.    The Evanston CGL Policies apply to "property damage" only if the "property damage" occurs during the policy period.

65.    The Evanston CGL Policies provide, in part, that "property damage" will be deemed to have been known to have occurred at the earliest time when Six Fortune (or Six Fortune's members, Six Fortune's managers, or any "employee" authorized by Six Fortune to give or receive notice of an "occurrence" or claim) receives a written or verbal demand or claim for damages because of the "property damage"; or becomes aware by any other means that "property damage" has occurred or has begun to occur.

66.    For the 2019-20 Evanston CGL Policy to apply, "property damage" must occur during the policy period of August 14, 2019 to August 14, 2020.

67.    For the 2020-21 Evanston CGL Policy to apply, "property damage" must occur during the policy period of August 14, 2020 to August 14, 2021.

68.    The Underlying Lawsuit does not allege that any of Seafood City's property was damaged, or that it sustained any injury or loss before February 2022.

69.    The Underlying Lawsuit does not allege any "property damage" that occurred during the policy period of the 2019-20 Evanston CGL Policy.

70.    Evanston owes no duty to defend Six Fortune in connection with the Underlying Lawsuit under the 2019-20 Evanston CGL Policy.

71.    The Underlying Lawsuit does not allege any "property damage" that occurred during the policy period of the 2020-21 Evanston CGL Policy.

72.    Evanston owes no duty to defend Six Fortune in connection with the Underlying Lawsuit under the 2020-21 Evanston CGL Policy.

**The Breach Of Contract Exclusions Preclude Coverage**

73.    The Breach of Contract exclusion in the Evanston CGL Policies' Combination General Endorsement provides, in part, that the Evanston CGL Policies do not apply to any claim arising out of actual or alleged breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in-fact contract.

74.    The Underlying Lawsuit alleges that Six Fortune breached the Lease.

75.    The Underlying Lawsuit alleges that Six Fortune breached duties owed to Seafood City arising from or in connection with the Lease.

76.    The Underlying Lawsuit alleges that Seafood City was damaged and incurred amounts because of Six Fortune's breach of the Lease.

77.    The Breach of Contract exclusions preclude any duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

18

**The Continuous Or Progressive Injury Or Damage Exclusion Precludes Coverage**

78.     The Continuous Or Progressive Injury Or Damage exclusion in the Evanston CGL Policies provides, in part, that the Evanston CGL Policies do not apply to "property damage" or "personal and advertising injury" that first occurred, first began to occur, or is alleged to have first occurred prior to the effective date of each respective policy.

79.     The Continuous Or Progressive Injury Or Damage exclusion in the Evanston CGL Policies provides, in part, that the Evanston CGL Policies do not apply to "property damage" or "personal and advertising injury" that is alleged to be in the process of occurring to any degree prior to the effective date of each respective policy.

80.     The Continuous Or Progressive Injury Or Damage exclusion in the Evanston CGL Policies provides, in part, that the Evanston CGL Policies do not apply to "property damage" or "personal and advertising injury" that is caused by or alleged to have been caused by incremental, continuous or progressive injury or damage arising from an "occurrence" or offense which first occurred, began to occur, or is alleged to have first occurred prior to the effective date of each respective policy.

81.     Six Fortune was advised that the roof of the Property was in need of replacement before Seafood City signed the Lease for the Property.

82.     Six Fortune was again advised that the roof of the Property was in need of replacement in 2018.

83.     The roof at the Property was not replaced on or before March 2023, when Seafood City vacated the Property.

84.     The roof leaks at the Property first started before August 14, 2019.

19

85.    The cause of the roof leaks and any resulting damage arose from acts or omissions that first occurred, began to occur, or is alleged to have first occurred before August 14, 2019.

86.    The claimed damage first began to occur and/or was in the process of occurring and/or was caused by or alleged to have been caused by incremental, continuous or progressive injury or damage arising from an "occurrence" or offense that first occurred, began to occur, or is alleged to have first occurred prior to the effective dates of each of the four Evanston CGL Policies.

87.    The Continuous Or Progressive Injury Or Damage exclusion precludes any duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

**The Damage To Property Exclusion Precludes Coverage**

88.    The Damage To Property exclusion in the Evanston CGL Policies (the "Damage to Property exclusion") provides, in part, that the Evanston CGL Policies do not apply to "property damage" to (1) property you own, including any costs or expenses incurred by Six Fortune or any other entity for repair, replacement, restoration or maintenance of such property for any reason, including prevention of damage to another's property.

89.    The Damage To Property exclusion in the Evanston CGL Policies (the "Damage to Property exclusion") provides, in part, that the Evanston CGL Policies do not apply to "property damage" to (5) that particular part of real property on which Six Fortune or any contractors or subcontractors working directly or indirectly on Six Fortune's behalf are performing operations, if the "property damage" arises out of those operations.

90.    The Underlying Lawsuit alleges that Six Fortune owns the Property and that Seafood City seeks damages, including costs or expenses Seafood City allegedly incurred for repair, replacement, restoration or maintenance of the Property.

20

91.    The Damage to Property exclusion precludes any duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

**The Damage To Impaired Property Or Property Not Physically Injured Exclusion Precludes Coverage**

92.    The Damage To Impaired Property Or Property Not Physically Injured exclusion in the Evanston CGL Policies (the "Impaired Property exclusion") provides, in part, that the Evanston CGL Policies do not apply to "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your work"; or a delay or failure by Six Fortune or anyone acting on Six Fortune's behalf to perform a contract or agreement in accordance with its terms.

93.    The Underlying Lawsuit alleges that Six Fortune engaged a contractor in September 2019 to make repairs to the damaged roof.

94.    The Underlying Lawsuit alleges that Six Fortune engaged a contractor in November of 2022 to effect temporary repairs to the roof.

95.    In the Underlying Lawsuit, Seafood City alleges that Six Fortune failed to pay the contractor and, as a result of Six Fortune's failure to pay the contractor, the contractor refused to perform the full scope of work.

96.    To the extent the Underlying Lawsuit involves "property damage" to "impaired property," such "property damage" arises out of a defect, deficiency, inadequacy or dangerous condition in "your work" and a delay or failure by Six Fortune or anyone acting on Six Fortune's behalf to perform a contract or agreement in accordance with its terms.

97.    To the extent the Underlying Lawsuit involves "property damage" to property that has not been physically injured, such "property damage" arises out of a defect, deficiency,

inadequacy or dangerous condition in "your work" and a delay or failure by Six Fortune or anyone acting on Six Fortune's behalf to perform a contract or agreement in accordance with its terms.

98.    The Impaired Property exclusion precludes any duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

**The Hazardous Or Toxic Substances Exclusion Precludes Coverage**

99.    The Hazardous Or Toxic Materials exclusion in the 2019-20 Evanston CGL Policy and 2020-21 Evanston CGL Policy provide, in part, that those Evanston CGL Policies do not apply to "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by "hazardous or toxic materials."

100.    The Hazardous Or Toxic Materials exclusion in the 2022-23 Evanston CGL Policy and 2023-24 Evanston CGL Policy provide, in part, that those Evanston CGL Policies do not apply to "property damage" or "personal and advertising injury" in any way involving, directly or indirectly, in whole or in part, the actual, alleged, or threatened contact with, exposure to, existence, or presence of "hazardous or toxic substances", regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such "property damage".

101.    "Hazardous or toxic materials" includes mold or mildew.

102.    The Underlying Lawsuit alleges that the damages include and/or were caused in whole or in part by mold.

103.    The Hazardous or Toxic Materials exclusion precludes any duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

**The Specified Roofing Operations Exclusion Precludes Coverage**

104.    The 2023-24 Evanston CGL Policy includes the Exclusion – Conditional Open Roofs and Specified Roofing Operations endorsement, which provides, in part, that the 2023-24 Evanston CGL Policy does not apply to "property damage" arising out of any ongoing or completed operations involving any hot tar or roof membrane of any type.

105.    The Underlying Lawsuit alleges damages arising out of ongoing or completed operations involving the roof membrane of the Property and/or involving hot tar.

106.    The Exclusion – Conditional Open Roofs and Specified Roofing Operations precludes any duty to defend Six Fortune against the Underlying Lawsuit under the Evanston CGL Policies.

107.    Accordingly, Evanston has no obligation to defend Six Fortune under the Evanston CGL Policies for the Underlying Lawsuit.

## COUNT II
### DECLARATORY RELIEF
**No Duty to Indemnify Six Fortune Against The Underlying Lawsuit**

108.    Evanston reiterates and incorporates Paragraphs 1-107 of its Complaint as if fully set forth and alleged herein.

109.    The Evanston CGL Policies provide that Evanston will pay, in part, those sums that the insured becomes legally obligated to pay as damages because of "property damage" to which the respective CGL Policies apply.

110.    The Evanston CGL Policies provide that Evanston will pay, in part, those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the respective CGL Policies apply.

23

111.    As explained prior, the Evanston CGL Policies are not implicated by the Underlying Lawsuit and Evanston owes no duty to defend Six Fortune.

112.    Accordingly, Evanston owes no duty to indemnify Six Fortune under the Evanston CGL Policies in relation to the Underlying Lawsuit.

**COUNT III**
**DECLARATORY RELIEF**
**There Is No Coverage For the Sanctions Award**

113.    Evanston reiterates and incorporates Paragraphs 1-112 of its Complaint as if fully set forth and alleged herein.

114.    The Evanston CGL Policies provide that Evanston will pay, in part, those sums that the insured becomes legally obligated to pay as damages because of "property damage" to which the respective CGL Policies apply.

115.    The Evanston CGL Policies provide that Evanston will pay, in part, those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the respective CGL Policies apply.

116.    On June 13, 2023, almost two years prior to Six Fortune providing notice of the Underlying Lawsuit to Evanston, Seafood City issued discovery to Six Fortune in the Underlying Lawsuit. A copy of the Certificate of Service of Written Discovery is attached as **Exhibit G**.

117.    Six Fortune failed to respond to Seafood City's discovery and failed to comply with various orders entered by the court in the Underlying Lawsuit in connection with that discovery.

118.    Consequently, an order was entered in the Underlying Lawsuit awarding Seafood City attorney's fees, expert witness fees, and related costs and expenses, arising from Six Fortune's

failure to respond to discovery (the "Sanction Award"). A copy of the Sanctions Award is attached as **Exhibit H**.

119.    By letter dated December 12, 2025, Six Fortune requested that Evanston provide coverage for the Sanction Award. A copy of the letter is attached as **Exhibit I**.

120.    The Sanctions Award does not constitute damages because of "property damage" or "property damage" caused by an "occurrence."

121.    The Sanctions Award does not constitute damages because of "personal and advertising injury" or "personal and advertising injury" caused by an offense arising out or Six Fortune's business.

122.    Accordingly, Evanston has no obligation to indemnify Six Fortune for the Sanction Award.

**COUNT IX**
**DECLARATORY RELIEF**
**The Fines and Penalties Exclusion Precludes Coverage For The Sanctions Award**

123.    Evanston reiterates and incorporates Paragraphs 1-122 of its Complaint as if fully set forth and alleged herein.

124.    The Fines, Penalties And Punitive Damages exclusion in the 2019-20 Evanston CGL Policy and 2020-21 Evanston CGL Policy provide, in part, that those Evanston CGL Policies do not apply to fines, penalties, and punitive or exemplary damages.

125.    The Fines, Penalties, Punitive Damages, Or Exemplary Damages exclusion in the 2022-23 Evanston CGL Policy and 2023-24 Evanston CGL Policy provide, in part, that those Evanston CGL Policies do not apply to fines, penalties, punitive damages, or exemplary damages.

126.    The Sanction Award is a fine or penalty.

25

127.    The Fines, Penalties And Punitive Damages exclusion in the 2019-20 Evanston CGL Policy and 2020-21 Evanston CGL Policy and the Fines, Penalties, Punitive Damages or Exemplary Damages exclusion in the 2022-23 Evanston CGL Policy and 2023-24 Evanston CGL Policy preclude any duty to defend or indemnify Six Fortune with respect to the Sanctions Award.

## PRAYER FOR RELIEF

WHEREFORE, Evanston respectfully requests that the Court enter judgment in its favor and against Defendant Six Fortune finding and declaring that:

a.  Evanston has no obligation to defend Six Fortune under the Evanston CGL Policies in connection with the Underlying Lawsuit;

b.  Evanston has no obligation to indemnify Six Fortune under the Evanston CGL Policies in connection with the Underlying Lawsuit, whether by settlement, adverse judgment or otherwise;

c.  Evanston owes no coverage or other obligation to Six Fortune under the Evanston CGL Policies with respect to the Underlying Lawsuit;

d.  Evanston has no coverage or other obligation to Six Fortune under the Evanston CGL Policies in connection with the Sanctions Award; and

e.  Awarding Evanston such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Evanston hereby demands a trial by jury of all triable issues in this case.

DATED: May 1, 2026                        Respectfully submitted,

_/s/_    Cody S. Moon
Cody S. Moon (KS #27830)

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive, 36th Floor
Chicago, Illinois 60606
T: (312) 585-1400
F: (312) 585-1401
cmoon@nicolaidesllp.com

## DESIGNATION OF PLACE OF TRIAL

Evanston designates Kansas City, Kansas as the place of trial.

*/s/*    Cody S. Moon
Cody S. Moon (KS #27830)
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive, 36th Floor
Chicago, Illinois 60606
T: (312) 585-1400
F: (312) 585-1401
cmoon@nicolaidesllp.com